1
2
**BLUMENTHAL NORDREHAUG BHOWMIK**
**DE BLOUW LLP**
Norman B. Blumenthal, Esq. (SBN #68687)
3
Kyle Nordrehaug, Esq. (SBN #205975)
4
2255 Calle Clara
La Jolla, California 92037
5
Telephone: (858) 551-1223
6
Facsimile:  (858) 551-1232

7
Attorneys for Plaintiff Michael Ignacio
8
[*Additional Attorneys listed on following page*]

9
**UNITED STATES DISTRICT COURT**
10
**CENTRAL DISTRICT OF CALIFORNIA**
11

12
MICHAEL IGNACIO, an individual,
on behalf of himself and on behalf of all
13
persons similarly situated,
14
              Plaintiff,
15
      vs.
16
LABORATORY CORPORATION OF
AMERICA, a Delaware Corporation;
17
and DOES 1 through 500, inclusi,
18
              Defendants.
19
MEER JAN,
              Plaintiff,
20
      vs.
21
LABORATORY CORPORATION OF
AMERICA,
22
              Defendants.
23

24
ALMA HARO,
              Plaintiff,
25
      vs.
26
LABORATORY CORPORATION OF
AMERICA,
27
              Defendants.
28

**Case No. 2:19-cv-06079-AB-RAO**

[Related Case Nos. 2:18-cv-09091-AB-RAO and 2:19-cv-07310-CAS (RAOx)]

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date:      November 13, 2020
Time:      10:00 a.m.
Location:  United States District Court
           Central District
           350 W. 1st Street
           Courtroom 7B
           Los Angeles, CA 90012

**THE BAINER LAW FIRM**
Matthew R. Bainer, Esq. (SBN 220972)
1901 Harrison St., Suite 1100
Oakland, California 94612
Telephone:  (510) 922-1802
Facsimile:   (510) 844-7701
mbainer@bainerlawfirm.com

Attorneys for Plaintiff Alma Haro

**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Lirit A. King, Esq. (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
lking@bradleygrombacher.com

Attorneys for Plaintiff Meer Jan

4825-8149-3198.1

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 13, 2020 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 7B of the above-captioned court, located at 350 W. First Street, Los Angeles, California 90012, the Honorable André Birotte Jr. presiding, Plaintiffs Alma Haro, Michael  Ignacio and Meer Jan, individually and on behalf of those similarly situated will, and hereby do, move this Court for entry of an order and judgment granting final approval of the class action settlement and all agreed-upon terms therein.  This Motion, unopposed by Defendant Laboratory Corporation of America ("Defendant" or "Laboratory Corporation") (Plaintiffs and Defendant collectively referred to as the "Parties"), seeks final approval of:  (1) the Parties' Class Action Settlement Agreement ("Settlement Agreement" or "Agreement"); (2) settlement payments to Settlement Class Members; (3) a payment to the California Labor and Workforce Development Agency; and (4) and costs/expenses to the settlement administrator, ILYM Group, Inc.

This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Kyle Nordrehaug; (4) the Declaration of Marcus J. Bradley; (4) the Declaration of  Matthew Bainer; (5) the Declaration of Madely Nava  on behalf of ILYM Group, Inc.; (6) the [Proposed] Final Approval Order and Judgment; (7) the records, pleadings, and papers filed in this action; and (8) upon such other documentary and/or oral evidence as may be presented to the Court at the hearing.

Dated: October 9, 2020

**BAINER LAW FIRM**
By: */s/ Matthew R. Bainer*
Mathew R. Bainer, Esq.
Attorneys for Plaintiff Alma Haro

**BRADLEY/GROMBACHER, LLP**

1

2

By: _/s/ Marcus J. Bradley_____
Marcus J. Bradley, Esq.
Attorneys for Plaintiff Meer Jan

3

4

**BLUMENTHAL NORDREHAUG BHOWMIK  DEBLOUW LLP**

5

By: _/s/ Kyle Nordrehaug_____

6

Norman B. Blumenthal, Esq
Kyle Nordrehaug, Esq.
Attorneys for Plaintiff Michael Ignacio

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.    INTRODUCTION................................................................................1

II.   FACTS AND PROCEDURE.............................................................3

    A.    Overview of the Litigation ......................................................3

    B.    The Parties Settled After Mediation .......................................4

    C.    The Proposed Settlement Fully Resolves Plaintiffs' Claims ............................5

        1.    Composition of the Class................................................5

        2.    Settlement Consideration................................................5

        3.    Formula for Calculating Settlement Payments...........................6

        4.    Release by the Settlement Class......................................6

    D.    The Notice and Settlement Administration Process Were Completed Pursuant to the Court's Order .........................................7

III.  ARGUMENT..................................................................................8

    A.    The Standard for Final Approval Has Been Met ....................................8

    B.    The Settlement Was Achieved After Evaluating the Strengths of Plaintiffs' Case and the Risks, Expense, Complexity, and Likely Duration of Further Litigation..............................................10

    C.    The Settlement Was Reached through Arm's-Length Bargaining in Which All Parties Were Represented by Experienced Counsel......................12

    D.    Class Counsel Conducted a Thorough Investigation of the Factual and Legal Issues.................................................................13

    E.    The Class Has Responded Positively to the Settlement ...................................14

    F.    The Proposed PAGA Settlement Is Reasonable ............................................15

    G.    The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval ...............................................16

IV.   CONCLUSION..............................................................................16

1

**TABLE OF AUTHORITIES**

2 **CASES**

3 *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) ........................11

4 *Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004).....................14

5 *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).............................................12

6 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...................................................9

7 *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS

8     33900 (N.D. Cal. Apr. 3, 2009) .......................................................................................15

9 *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),

10     2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) .............................................12

11 *In re Heritage Bond Litigation*, 2005 WL 1594403 (C.D. Cal. June 10,

12     2005)................................................................................................................................10

13 *In re Volkswagen "Clean Diesel" Mktg.*, 2016 WL 4010049, at *14 (N.D.

14     Cal 2016)..........................................................................................................................13

15 *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)..........................12

16 *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ..................................................................9

17 *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...................9, 10

18 *Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009)...........................................10

19 *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .........................................9

20 *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970),

21     modified, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973) ..............................11

22 *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970)........................11

23

24 **STATE CASES**

25 *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App.

26     4th 1135 (2000) ...............................................................................................................15

27 *Neary v. Regents of University of California*, 3 Cal. 4th 273, 277 (1992) .......................12

28 *Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) ....................................................17

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(e) .................................................................................................8

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL)) .............................4

Cal. Lab Code §§ 2698 *et seq.* (Priv. Atty's. Gen. Act of 2004 (PAGA)).........................4

**TREATISES**

Manual for Complex Litigation (4th ed. 2004)................................................................8, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On July 22, 2020, the Court granted preliminary approval of the Class Action Settlement Agreement[1] and approved distribution of the Class Notice to all Class Members.  Class Members were given 45 days to opt out or object to the Settlement, and now that this response deadline has passed, Plaintiffs Alma Haro, Michael Ignacio and Meer Jan ("Plaintiffs") are pleased to report that:  (1) only 5 Class Members opted out of the Class (0.22% of the Class); (2) not one Settlement Class Members objected to the Settlement; (3) the **entire Net Settlement Fund will be disbursed to all 2,313 Settlement Class Members**; and (4) the average payment to Settlement Class Members is approximately $305, and the highest is approximately $664  (Declaration of Madely Nava ["Nava Decl."] ¶¶ 11-14.)

Plaintiffs now seek final approval of this Settlement with Laboratory Corporation of America ("Defendant" or "Laboratory Corporation") (collectively with Plaintiffs, the "Parties").   The basic terms of the Settlement provide for the following:

    (1)    A Class defined as:  All persons employed by Defendant in the State of California in the following positions: Patient Service Technicians ("PST"), PST Specialists, Patient Intake Representatives, PST Team Leaders, PSC Site Coordinators, PSC Administrators, PSC Administrators/PST, and Phlebotomist/Couriers during the period starting on September 20, 2014 through July 1, 2020 during the period September 20, 2014 to July 1, 2020 (the "Class Period").

    (2)    A non-reversionary Gross Settlement Fund of $1,225,000.00.  The Gross Settlement Fund includes:

        (a)    A Net Settlement Fund of approximately $701,666.67 (calculated

---

[1] Hereinafter, "Agreement" or "Settlement Agreement."  Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.  A true and correct copy of the Agreement is attached as Exhibit #1 to the Declaration of Kyle Nordrehaug.

as the Gross Settlement Fund minus all Court approved attorneys' fees and costs, the Class Representative Enhancement Payments, Administration Costs, and the PAGA Payment), which will be allocated to all Settlement Class Members as follows: a Final Workweek Value will be calculated by dividing the final Net Settlement Fund by the total number of Workweeks worked by all Settlement Class Members in Qualifying Positions during the Class Period. The Final Workweek Value will be multiplied by the total number of Workweeks each individual Settlement Class Member worked in a Qualifying Position during the Class Period to arrive at a final calculation of the Individual Settlement Payment.  **The Entire Net Settlement Fund will be paid to Settlement Class Members (all Class Members who do not submit a valid and timely request to exclude themselves from this Settlement), and without the need to submit claims for payment.**

(b)     Attorneys' fees not to exceed one-third of the Gross Settlement Fund (or $408,333.33) and litigation costs and expenses an amount not to exceed $40,000.00, to Plaintiffs' Counsel.

(c)     Settlement Administrator Costs of $23,341.50, to be paid to the Settlement Administrator, ILYM Group, Inc.

(d)     A PAGA Payment of $20,000 payment, Seventy-five percent (75% or $15,000.00) of the PAGA Payment shall be paid to the Labor and Workforce Development Agency ("LWDA") and twenty-five percent (25% or $5,000.00) of the PAGA Payment will be distributed to the Class.

(e)     Class Representative Enhancement Payments of $10,000, each, to Plaintiffs for their services on behalf of the Class and for agreeing to broader releases than those required of other Class Members.

An objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Gig Kyriacou, an experienced and well-respected class action mediator, and the Settlement confers substantial benefits to Class Members. The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases (*see infra*). Indeed, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial.

Accordingly, given the Settlement's favorable terms and the manner in which these terms were negotiated and received by Class Members, Plaintiffs respectfully request that the Court grant this Motion for Final Approval of the Settlement Agreement and retain jurisdiction to enforce the Settlement.

## II.    FACTS AND PROCEDURE

### A.    Overview of the Litigation

This consolidated action is comprised of three related cases: (1) *Alma Haro v. Laboratory Corporation of American*, Case No. 2:18-cv-09091-AB-RAO; (2) *Michael Ignacio v. Laboratory Corporation of America*, Case No. 2:19-cv-06079-AB-RAO; and (3) *Meer Jan v. Laboratory Corporation of America*, Case No. 2:19-cv-07310-AB-RAO. At first, these cases were consolidated for purposes of discovery. Later, the cases were consolidated for the purpose of settlement. A Consolidated Complaint encompassing the *Haro*, *Ignacio* and *Jan* actions was filed July 29, 2020 [Dkt. No. 39]. (Declaration of Kyle Nordrehaug ["Nordrehaug Decl."] ¶ 3.)

Defendant Laboratory Corporation of America Holdings (LabCorp) is one of the top providers of clinical laboratory services in the world, performing tests on more than 440,000 patient specimens each day on behalf of managed care organizations, hospitals, doctors, government agencies, drug companies, and employers. Its services range from routine urinalyses, HIV tests, and Pap smears to specialty testing for diagnostic genetics,

oncology diagnosis and monitoring, infectious diseases, clinical drug trials, and allergies. LabCorp operates about 1,700 service sites across the US that collect patient specimens and ship them to one of its primary laboratories where tests are performed. Defendant employs non-exempt hourly employees at each of these service sites and laboratories. All three Plaintiffs worked for Defendant at locations throughout the State of California. (Nordrehaug Decl. ¶ 4.)

The operative Consolidated Complaint alleges class claims for violations of California law regarding overtime pay, minimum wages, meal and rest periods, and expense reimbursement, as well as derivative claims for the late payment of wages, inaccurate wage statements, and unlawful and unfair business practices under California Business & Professions Code section 17200, *et seq.*  The Consolidated Complaint also seeks civil penalties under the Private Attorneys General Act of 2004 ("PAGA") codified at California Labor Code section 2698, *et seq.*  (Nordrehaug Decl. ¶ 5.)

Plaintiffs propounded special interrogatories and demands for production of documents to which Defendant responded. Defendant produced documents related to its wage and hour policies, including meal and rest breaks, time keeping policies, time and wage records, and its business organization charts.  Additionally, depositions of Plaintiffs, Haro, Ignacio and Jan were conducted by Defendant. Defendant has also produced a comprehensive batch of Defendant's policies and procedures. At the time of the mediation, Class Counsel had prepared for and were proceeding with arrangements to conduct the deposition of the Defendant's 30(b)(6) deponent. (Nordrehaug Decl. ¶ 6.)

**B.    The Parties Settled After Mediation**

On February 25, 2020, the Parties participated in a global private mediation of the *Haro*, *Ignacio*, and *Jan* Actions. The Parties engaged in extensive, arm's-length negotiations mediated by experienced and respected class action wage and hour mediator, Gig Kyriacou. After considerable negotiation, the Parties reached an agreement in principle to settle the case, the terms of which were negotiated over the following weeks and finalized in Agreement the Parties now ask the Court to approve.

1    At all times, the Parties' negotiations were adversarial and non-collusive, and the

2    Settlement thus constitutes a fair, adequate, and reasonable compromise of the claims at

3    issue.  (Nordrehaug Decl. ¶ 7)

4            **C.    The Proposed Settlement Fully Resolves Plaintiffs' Claims**

5                    **1.    Composition of the Class**

6            The Class consists all persons employed by Laboratory Corporation of America

7    in the State of California in the following positions: Patient Service Technicians

8    ("PST"), PST Specialists, Patient Intake Representatives, PST Team Leaders, PSC Site

9    Coordinators, PSC Administrators, PSC Administrators/PST, and Phlebotomist/Couriers

10    during the period starting on September 20, 2014 through July 1, 2020 during the period

11    September 20, 2014 to July 1, 2020 (the "Class Period").  (Agreement at ¶ 9.)  There are

12    a total of 2,318 Class Members, of which 5 opted out.

13                    **2.    Settlement Consideration**

14            Plaintiffs and Defendant have agreed to settle all class claims and representative

15    claims alleged in the Actions in exchange for the Gross Settlement Fund of $1,225,000.

16    The Gross Settlement Fund includes: (1) settlement payments to Settlement Class

17    Members; (2) $408,333.33 in attorneys' fees and up to $40,000 in litigation

18    costs/expenses to Class Counsel; (3) a $15,000 payment to the LWDA; (4) Settlement

19    Administrator Costs of $23,341.50; and (5) Class Representative Enhancement

20    Payments of up to $10,000, each, to the three Plaintiffs for their services on behalf of the

21    Settlement Class.  (Agreement ¶¶ 13, 15, 19, 51.)

22            Subject to the Court approving Attorneys' Fees and Costs, the payment to the

23    LWDA, Settlement Administrator Costs, and the Class Representative Enhancement

24    Payments, the Net Settlement Fund will be distributed to all Settlement Class Members.

25    Because the Gross Settlement Fund is non-reversionary, 100% of the Net Settlement

26    Fund will be paid to Settlement Class Members, and without the need to submit claims

27    for payment.  (*Id.* at ¶ 34.)

28

### 3.    Formula for Calculating Settlement Payments

Each Class Member's share of the Net Settlement Fund will be proportional to the weeks of employment for each Putative Class Member in a Qualifying Position during the Class Period. (Agreement ¶¶ 24, 35.) Individual Settlement Payments will be calculated as follows:

- Upon Final Approval, a Final Workweek Value will be calculated by dividing the final Net Settlement Fund by the total number of Workweeks worked by all Settlement Class Members in Qualifying Positions during the Class Period. The Final Workweek Value will be multiplied by the total number of Workweeks each individual Settlement Class Member worked in a Qualifying Position during the Class Period to arrive at a final calculation of the Individual Settlement Payment. If a Settlement Class Member worked any day during a Workweek, it will be counted as a Workweek for purposes of calculating the final Individual Settlement Payment.

- Within fifteen (15) days of the Defendant's payment of the Gross Settlement Fund, as set forth in Paragraph 36, the Settlement Administrator shall pay each Settlement Class Member an Individual Settlement Payment as describe immediately above.

(Agreement ¶ 35.)

### 4.    Release by the Settlement Class

In exchange for the Gross Settlement Fund, Plaintiffs and Class Members who do not opt out will agree to release the Released Parties for the Released Class Claims, which are defined as:

All claims for unpaid wages, premiums, and civil and statutory penalties under the applicable California Labor Code, Wage Orders, regulations, and/or provisions of federal or state law governing wages and hours of work that were asserted in the Putative Class Actions, or that arise from or could have been asserted based on any of the facts, circumstances, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act alleged in Plaintiffs' Putative Class Actions arising out of or related to the Putative Class Member's employment with Defendant and which arose during the Class Period, regardless of whether such claims arise under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law that occurred during the Class Period, including but not limited to: (1) claims for failure to pay wages earned pursuant to California Labor Code §§1194, 1194.2, 1198 or the Industrial Welfare Commission ("IWC") Wage Orders; (2) claims for failure to pay overtime pursuant to California Labor Code §§510, 1194 or the IWC Wage Orders; (3) claims for failure to pay overtime under Labor Code §§1197, 1199 or the IWC Wage Orders; (4) claims for failure to pay at least minimum wages in violation of California Labor Code §§1194, 1197, 1197.1 or the IWC Wage Orders; (5) claims for the failure to issue

complete and accurate wage statements pursuant to California Labor Code §226(a) or the IWC Wage Orders, and failure to maintain records and information pursuant to California Labor Code §§226(a), 1174, 1175 or the IWC Wage Orders; (6) claims for the failure to timely pay wages upon termination pursuant to California Labor Code §§201, 202 or 203; (7) claims for the failure to timely pay wages pursuant to California Labor Code §§204, 216 or 225.5; (8) claims for meal period and/or rest period violations under California Labor Code §§226.7, 226.7(b), or 512(a) or the IWC Wage Orders; (9) claims for reporting time pay violations under California Labor Code §1198 or the IWC Wage Orders; (10) claims for business expenses under California Labor Code section 2802; (11) incorporated or related claims asserted through California Labor Code §§2699, *et seq.* ("PAGA") or § 558; (12) claims under the Fair Labor Standards Act related to the claims asserted in this Action; (13) claims for unpaid wages for "off the clock" work; (14) claims for related penalties (*e.g.*, under California Labor Code §210); and (15) incorporated or related claims pursuant to the California Business and Professions Code §§17200, *et seq.* As a result of the Agreement, Putative Class Members will be deemed to no longer be aggrieved employees for purposes of PAGA as to any claims that arise from or could have been asserted based on any of the facts, circumstances, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act alleged in Plaintiffs' Putative Class Actions..

(Agreement ¶ 22.) The Released Claims are those that accrued during the period from September 20, 2014 to July 1, 2020. (*Id.*)

> ### D.    The Notice and Settlement Administration Process Were Completed Pursuant to the Court's Order

As authorized by the Court's Order preliminarily approving the Settlement Agreement, the Parties engaged ILYM to provide settlement administration services. (Nava Decl. ¶ 3.) ILYM's duties have included: (1) printing and mailing Class Notices, (2) calculating settlement payments (this will include distribution of funds and tax-reporting following final approval), and (3) answering questions from Class Members. (*Id.*)

On July 22, 2020, ILYM received the Class Notice prepared jointly by Class Counsel and counsel for Defendants and approved by the Court. (Nava Decl. ¶ 4.) The Class Notice summarized the Settlement's principal terms, provided Class Members with an estimate of how much they would be paid if the Settlement received final approval, and advised Class Members about how to opt out of the Settlement and how to object. (Nava Decl., Ex. A.)

Separately, counsel for Defendant provided Nava with a mailing list (the "Putative Class List"), which included each Class Member's full name, last known address, Social Security Number, and information necessary to calculate payments. (Nava Decl. ¶ 5.)  The mailing addresses contained in the Class List were processed and updated using the National Change of Address Database maintained by the U.S. Postal Service.  (*Id.* at ¶ 6.)  On August 12, 2020, ILYM mailed Class Notices to Class Members via First-Class U.S. mail.  (*Id.* at ¶ 7.)  Class Members were given until September 26, 2020 to opt out or object to the Settlement.  Plaintiffs are pleased to report that only 5 Class Members opted out and no Class Member objected to the Settlement. (*Id.* at ¶¶ 11-13.)

## III.   ARGUMENT

### A.    The Standard for Final Approval Has Been Met

A class action may only be settled, dismissed, or compromised with the Court's approval.  Fed. R. Civ. Proc. 23(e).  The process for court approval of a class action settlement is comprised of three principal stages:

Preliminary Approval:  The proposed settlement agreement is preliminarily reviewed by the Court for fairness, adequacy, and reasonableness.  If the Court believes the settlement falls within the range of reasonableness, such that proceeding to a formal fairness hearing is warranted, it orders notice of the settlement disseminated to the class. *See* Manual for Complex Litigation § 21.632 (4th ed. 2004).

Class Notice:  Notice of the settlement is disseminated to the class, giving class members an opportunity to object to the settlement's terms or preserve their right to bring an individual action by opting out.  *See id.*, § 21.633.

Final Approval:  A formal fairness or final-approval hearing is held by the Court, at which class members can be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is

presented.[2]  Following the hearing, the Court decides whether to approve the settlement and enter a final order and judgment.  *See id.*, § 21.634.

The first two steps have been completed.  The Court has preliminarily reviewed the proposed settlement for fairness and found it to be within the range of reasonableness meriting court approval.  (*See* Order Granting Motions for Preliminary Approval of Class Settlement, Dkt. No. 45.)  In addition, the Settlement Administrator has notified Class Members of the proposed settlement and upcoming fairness hearing as directed by the Court.  (*See generally* Nava Decl.)  Plaintiffs now ask the Court to grant final approval of the proposed settlement.

The decision about whether to approve the proposed settlement is committed to the sound discretion of the trial judge, and will not be overturned except upon a strong showing of a clear abuse of discretion.  *Hanlon*, 150 F.3d at 1026-1027.  The Ninth Circuit has set forth a list of non-exclusive factors that a district court should consider in deciding whether to grant final approval, namely: (1) the strength of plaintiffs' case, and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout the trial; (3) the amount offered in settlement; (4) the extent of discovery completed, and the stage of the proceedings; (5) the experience and views of counsel; and (6) the reaction of the class members to the proposed settlement.  *Id.* at 963 (*citing Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).

These factors, which are discussed below, confirm that the proposed settlement is

---

[2] A proposed class action settlement may be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate."  In making this determination, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . .").

1  more than fair, reasonable, and adequate for Class Members.  The settlement provides

2  considerable value; Class Members need not bear the risk and delay associated with trial

3  proceedings to obtain these benefits; and the Settlement has been met with substantial

4  support and no opposition from Class Members.

5  **B.    The Settlement Was Achieved After Evaluating the Strengths of**

6  **Plaintiffs' Case and the Risks, Expense, Complexity, and Likely**

7  **Duration of Further Litigation**

8  In assessing the probability and likelihood of success, "the district court's

9  determination is nothing more than an amalgam of delicate balancing, gross

10  approximations, and rough justice."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

11  615, 625 (9th Cir. 1982) (internal quotation marks omitted).  There is "no single

12  formula" to be applied, but the court may presume that the parties' counsel and the

13  mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood

14  of recovery.  *Rodriguez v. West Pub. Corp*., 463 F.3d 948, 965 (9th Cir. 2009).  In

15  deciding whether a settlement should be approved, the Ninth Circuit has a "strong

16  judicial policy that favors settlement, particularly where complex class action litigation is

17  concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403 (C.D. Cal. 2005).

18  Plaintiffs were cautiously optimistic about the chances of prevailing at trial on

19  their certified claims.  Nevertheless, Plaintiffs recognize that if the litigation had

20  continued, they may have encountered significant legal and factual hurdles that could

21  have prevented the Class from obtaining full recovery for their claims, or perhaps even

22  any recovery (under the worst case scenario).  In particular, Plaintiffs' decision to settle

23  was influenced by the following considerations:  (i) the strength of Defendants' defenses

24  on the merits; (ii) the risk of losing on any of a number of dispositive motions that could

25  have been brought between now and trial (e.g., motions to decertify the class, motions

26  for summary judgment, motion to strike the PAGA claims as unmanageable, and/or

27  motions in limine) which may have eliminated all or some of Plaintiffs' claims, or barred

28  evidence necessary to prove such claims; (iii) the risk of losing at trial; (iv) the chances

1    of a favorable verdict being reversed on appeal; and (v) the difficulties attendant to

2    collecting on a judgment. The specific strengths and risks of the class claims were

3    addressed extensively in the motion for preliminary approval.  (Nordrehaug Decl. ¶ 8.)

4        Moreover, even if certification status had been maintained through trial, Plaintiffs

5    were cognizant of the fact that the outcome was far from certain, and that Defendants

6    were mounting an aggressive defense.  Although Plaintiffs believe that they have valid

7    counter-arguments to the defenses, and were cautiously optimistic about their chances of

8    prevailing at trial, this optimism was tempered by the recognition that the odds of a

9    favorable verdict being reversed on appeal are not too remote to ignore.  *West Virginia v.*

10   *Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past

11   experience that no matter how confident one may be of the outcome of litigation, such

12   confidence is often misplaced"), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc.*

13   *v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment

14   after trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970),

15   modified, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973) (overturning $145

16   million judgment after years of appeals).

17       Additionally, early resolutions save time and money that would otherwise go to

18   litigation.  Parties' resources, as well as the Court's, would be further taxed by continued

19   litigation.  And if this action had settled following additional litigation, the settlement

20   amount would likely have taken into account the additional costs incurred, such that

21   there may have been less available for Class Members. Cost savings is one reason why

22   California policy strongly favors early settlement.  *See Neary v. Regents of University of*

23   *California*, 3 Cal. 4th 273, 277 (1992) (explaining the high value placed on settlements

24   and observing that "[s]ettlement is perhaps most efficient the earlier the settlement

25   comes in the litigation continuum."). This concern also supports settlement.

26       Finally, as detailed at preliminary approval, in light of the defenses and challenges

27   discussed above, in considering Plaintiffs had to discount their exposure analysis. The

28   total exposure for Plaintiffs' core non-PAGA claims were evaluated at approximately

$5,000,000. In discounting their exposure, Plaintiffs had to consider the realistic potential of achieving and maintaining class certification and recovering under each of their theories. Based on the above strengths and challenges and considerable investigation and settlement negotiations, Plaintiffs and their experienced counsel conclude that the substantial sum of $1,225,000 Defendant will pay under the terms of the proposed settlement was in the best interests of the class.  (Nordrehaug Decl. ¶ 8.)

In summary, although Plaintiffs and their counsel maintained a strong belief in the underlying merits of the claims, they also acknowledge the significant challenges posed by continued litigation through trial.  Accordingly, when balanced against the risk and expense of continued litigation, the settlement is fair, adequate, and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").

## C.    The Settlement Was Reached through Arm's-Length Bargaining in Which All Parties Were Represented by Experienced Counsel

As discussed above, the Settlement is the result of arm's-length negotiations by experienced counsel.  The Parties participated in mediation with Gig Kyriacou, a respected mediator of wage and hour class actions.  Mediator Kyriacou helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides.  A mediator's participation weighs considerably against any inference of a collusive settlement. *See  In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.")  At all times, the Parties' negotiations were adversarial and non-collusive.

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement.  Plaintiffs were represented by Bainer Law

Firm, Blumenthal Nordrehaug Bhowmik De Blouw LLP, and Bradley/Grombacher LLP as Class Counsel. Class Counsel are seasoned class action attorneys who regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions. (*See* Nordrehaug Decl. ¶ 12; Bradley Decl. ¶¶ 6-8; Bainer Decl. ¶¶ 2-3.) Defendants were represented by Nixon Peabody LLP, which operates a respected wage and hour defense practice.

As this Settlement is the "result of arms'-length negotiations by experienced class counsel, [it is] entitled to 'an initial presumption of fairness.'" *In re Volkswagen "Clean Diesel" Mktg.*, 2016 WL 4010049, at *14 (N.D. Cal 2016) (internal citation omitted).

## D.   Class Counsel Conducted a Thorough Investigation of the Factual and Legal Issues

The Settlement is the product of informed negotiations following extensive investigation by Class Counsel. During this matter's pendency, the Parties thoroughly investigated and researched the claims in controversy, their defenses, and the developing body of law. The investigation entailed the exchange of information pursuant to formal and informal discovery methods, including interrogatories and document requests, and depositions. (Nordrehaug Decl. ¶ 9.)

Defendant produced documents related to its wage and hour policies, including meal and rest breaks, time keeping policies, time and wage records, and its business organization charts. Additionally, depositions of Plaintiffs, Haro, Ignacio and Jan were conducted by Defendant. Defendant has also produced a comprehensive batch of Defendant's policies and procedures. At the time of the mediation, Class Counsel had prepared for and were proceeding with arrangements to conduct the deposition of the Defendant's 30(b)(6) deponent. (Nordrehaug Decl. ¶ 10.)

Overall, Class Counsel performed a thorough investigation into the claims at issue, which included: (1) determining Plaintiffs' suitability as putative class representatives through interviews, background investigations, and analyses of their employment files and related records; (2) evaluating all of Plaintiffs' potential claims; (3)

researching similar wage and hour class actions as to the claims brought, the nature of the positions, and the type of employer; (4) interviewing putative Class Members to gather information about potential claims and identify additional witnesses; (5) analyzing Defendant's labor policies and practices; (6) preparing for the deposition of Defendant's persons most knowledgeable;  (7) defending Plaintiffs' depositions; (8) researching settlements in similar cases; (9) conducting a valuation analysis of claims; (10) drafting the mediation brief; (11) participating in mediation; and (12) finalizing the Settlement Agreement.  The extensive document and data exchanges have allowed Class Counsel to appreciate the strengths and weaknesses of the claims alleged against Defendant and the benefits of the proposed Settlement.  (Nordrehaug Decl. ¶ 11.)

### E.    The Class Has Responded Positively to the Settlement

The Class' response demonstrates its support for this settlement—only 5 Class Members opted out and zero (0) Class Members objected to the Settlement.  (Nava Decl. ¶¶ 11-13.)  Class Members will share the entire Net Settlement Fund and will receive an average payment of $305, with the highest being $664.  (*Id.* at ¶ 14.)  A low number of opt-outs and objections is a strong indicator that a settlement is fair and reasonable.  *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (class response favorable where "[a] mere 80 of the 5,454 national class members elected to opt out  [(1.5% of the entire Class)] and . . . [a] total of nine members . . . objected to the settlement); *Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004) (affirming settlement approval where 45 of approximately 90,000 notified class members objected and 500 opted out).  The Class' response—both in the low rate of opt-outs and the complete absence of objectors—compares favorably to those cases and warrants final approval.

Likewise, the average Class Member recovery of $305 compares favorably to other wage and hour class action settlements for similar claims on behalf of non-exempt employees.  *See*, *e.g.*, *Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619 (Sacramento County Super. Ct.) (average net recovery of approximately $80); *Fukuchi*

1  *v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of

2  approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253

3  (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v.*

4  *Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.)

5  (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No.

6  CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of

7  approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD

8  (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores,*

9  *Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of

10 approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A.

11 Super. Ct.) (average net recovery of approximately $20).

12      **F.     The Proposed PAGA Settlement Is Reasonable**

13      Pursuant to the Settlement Agreement, $20,000 from the Gross Settlement Fund

14 shall be allocated to the resolution of the PAGA claim, of which 75% ($15,000) will be

15 paid directly to the LWDA, and the remaining 25% will be the PAGA Payment will be

16 distributed to the Class. (Settlement Agreement ¶¶ 20.) This result was reached after

17 good-faith negotiation between the parties. Where PAGA penalties are negotiated in

18 good faith and "there is no indication that [the] amount was the result of self-interest at

19 the expense of other Class Members," such amounts are generally considered

20 reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS

21 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see*, *e.g.*, *Nordstrom Com. Cases*, 186 Cal. App.

22 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement

23 which does not allocate any damages to the PAGA claims.").

24      The PAGA component of the Settlement is the product of arms'-length

25 negotiations between counsel well versed in the intricacies of PAGA litigation and more

26 importantly, wage and hour employment law. Class Counsel conducted extensive

27 formal and informal investigation and discovery into the claims at issue and have

28 assessed both the strengths and weaknesses of the claims and the risks of continued

litigation.  Based on the preceding, Class Counsel strongly believe that the PAGA component of the Settlement appropriately reflects the relative strengths of the Parties' respective claims and defenses, as well as the substantial risks presented in continuing the litigation.

> **G.    The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval**

Plaintiffs request final approval of Settlement Administrator Costs in the amount of $23,341.50.  (Nava Decl. ¶ 15.)  ILYM has promptly and properly distributed the Class Notice to all Class Members and completed its duties in accordance with the settlement terms and the Court's preliminary approval Order.  (*See generally* Dancy Decl.)  Accordingly, the $23,341.50 payment is fair and reasonable and should be accorded final approval along with the rest of the Settlement terms.

## IV.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of a case that provides relief that likely would never have been realized but for this class action. Accordingly, final approval of the Settlement should be granted.

Dated: October 9, 2020

**BAINER LAW FIRM**
By*: /s/ Matthew R. Bainer*
Mathew R. Bainer, Esq.
Attorneys for Plaintiff Alma Haro

**BRADLEY/GROMBACHER, LLP**
By*:  /s/ Marcus J. Bradley*
Marcus J. Bradley, Esq.
Attorneys for Plaintiff Meer Jan

**BLUMENTHAL NORDREHAUG BHOWMIK  DEBLOUW LLP**
By: */s/ Kyle Nordrehaug*
Norman B. Blumenthal, Esq
Kyle Nordrehaug, Esq.
Attorneys for Plaintiff Michael Ignacio